**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE GALEANO,<br><br>    Plaintiff,<br><br>    v.<br><br>E*TRADE FINANCIAL CORPORATION, RODGER A. LAWSON, KEVIN T. KABAT, RICHARD J. CARBONE, ROBERT CHERSI, JAIME W. ELLERTSON, JAMES P. HEALY, JAMES LAM, SHELLEY B. LEIBOWITZ, MICHAEL A. PIZZI, REBECCA SAEGER, DONNA L. WEAVER, and JOSHUA WEINREICH,<br><br>    Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jacqueline Galeano ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against E*TRADE Financial Corporation ("E*TRADE" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of E*TRADE by Morgan Stanley and Moon-Eagle Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Morgan Stanley.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business and has operations in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of E*TRADE common stock.

7. Defendant E*TRADE is a financial services company that provides brokerage, and related products and services for traders, investors, registered investment advisors, and stock plan

administrators and participants. The Company is incorporated in Delaware and maintains operations in Jersey City, New Jersey.[1] The Company's common stock trades on the NASDAQ under the ticker symbol, "ETFC."

8. Defendant Rodger A. Lawson ("Lawson") is Chairman of the Board of the Company.

9. Defendant Kevin T. Kabat ("Kabat") is a director of the Company.

10. Defendant Richard J. Carbone ("Carbone") is a director of the Company.

11. Defendant Robert Chersi ("Chersi") is a director of the Company.

12. Defendant Jaime W. Ellertson ("Ellertson") is a director of the Company.

13. Defendant James P. Healy ("Healy") is a director of the Company.

14. Defendant James Lam ("Lam") is a director of the Company.

15. Defendant Shelley B. Leibowitz ("Leibowitz") is a director of the Company.

16. Defendant Michael A. Pizzi ("Pizzi") is Chief Executive Officer and a director of the Company.

17. Defendant Rebecca Saeger ("Saeger") is a director of the Company.

18. Defendant Donna L. Weaver ("Weaver") is a director of the Company.

19. Defendant Joshua Weinreich ("Weinreich") is a director of the Company.

20. Defendants Lawson, Kabat, Carbone, Chersi, Ellertson, Healy, Lam, Leibowitz, Pizzi, Saeger, Weaver, and Weinreich are collectively referred to herein as the "Individual Defendants."

---

[1] According to the Company's annual report filed on Form 10-K with the SEC for the fiscal year ended December 31, 2019, the Company "exited its New York headquarters during the three months ended December 31, 2019 and consolidated related operations at its Jersey City, New Jersey location."

21.     Defendants E*TRADE and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

22.     Morgan Stanley provides various financial products and services to corporations, governments, financial institutions, and individuals in the Americas, Europe, the Middle East, Africa, and Asia. Morgan Stanley is incorporated in Delaware with principal executive offices located in New York, New York. Morgan Stanley's common stock trades on the New York Stock Exchange under the ticker symbol, "MS."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

23.     On February 20, 2020, E*TRADE and Morgan Stanley announced that they had entered into a definitive agreement under which Morgan Stanley would acquire E*TRADE in an all-stock transaction. Under the terms of the agreement, E*TRADE stockholders would receive 1.0432 Morgan Stanley shares for each E*TRADE share. The press release states, in pertinent part:

> **Morgan Stanley to Acquire E*TRADE, Creating a Leader in all Major Wealth Management Channels**
>
> **• Combined platforms will have $3.1Tn client assets, 8.2MM retail client relationships and accounts, and 4.6MM stock plan participants**
>
> **• Combination increases Wealth Management scale, fills product and services gaps through complementary offerings, and enhances digital capabilities; positions Morgan Stanley as a top player across all three channels: Financial Advisory, Workplace, and Self-Directed**
>
> **• Significant cost and funding synergies will result in stronger financial performance and shareholder value creation**
>
> **• Combination accelerates Morgan Stanley's transition to a more balance sheet light business mix and more durable sources of revenue**

4

February 20, 2020 07:30 AM Eastern Standard Time

NEW YORK & ARLINGTON, Va.--(BUSINESS WIRE)--Morgan Stanley (NYSE: MS) and E*TRADE Financial Corporation (NASDAQ: ETFC) have entered into a definitive agreement under which Morgan Stanley will acquire E*TRADE, a leading financial services company and pioneer in the online brokerage industry, in an all-stock transaction valued at approximately $13 billion. Under the terms of the agreement, E*TRADE stockholders will receive 1.0432 Morgan Stanley shares for each E*TRADE share, which represents per share consideration of $58.74 based on the closing price of Morgan Stanley common stock on February 19, 2020.

The combination will significantly increase the scale and breadth of Morgan Stanley's Wealth Management franchise, and positions Morgan Stanley to be an industry leader in Wealth Management across all channels and wealth segments. E*TRADE has over 5.2 million client accounts with over $360 billion of retail client assets, adding to Morgan Stanley's existing 3 million client relationships and $2.7 trillion of client assets. Morgan Stanley's full-service, advisor-driven model coupled with E*TRADE's direct-to-consumer and digital capabilities, will allow the combined business to have best-in-class product and service offerings to support the full spectrum of wealth.

"E*TRADE represents an extraordinary growth opportunity for our Wealth Management business and a leap forward in our Wealth Management strategy. The combination adds an iconic brand in the direct-to-consumer channel to our leading advisor-driven model, while also creating a premier Workplace Wealth provider for corporations and their employees. E*TRADE's products, innovation in technology, and established brand will help position Morgan Stanley as a top player across all three channels: Financial Advisory, Self-Directed, and Workplace," said James Gorman, Chairman and CEO of Morgan Stanley. "In addition, this continues the decade-long transition of our Firm to a more balance sheet light business mix, emphasizing more durable sources of revenue."

"Finally, I am delighted that Mike Pizzi, CEO of E*TRADE, will be joining Morgan Stanley. Mike will continue to run the E*TRADE business within the Morgan Stanley franchise and lead the ongoing integration effort. Mike will report to me and will join the Morgan Stanley Operating and Management Committees. In addition, we will invite one of E*TRADE's independent directors to join our Board. We look forward to welcoming the infusion of management and technology talent that E*TRADE will bring to Morgan Stanley."

"Since we created the digital brokerage category nearly 40 years ago, E*TRADE has consistently disrupted the status quo and delivered cutting-edge tools and services to investors, traders, and stock plan administrators," said Mike Pizzi, Chief Executive Officer of E*TRADE. "By joining Morgan Stanley, we will be able to

take our combined offering to the next level and deliver an even more comprehensive suite of wealth management capabilities. Bringing E*TRADE's brand and offerings under the Morgan Stanley umbrella creates a truly exciting wealth management value proposition and enables our collective team to serve a far wider spectrum of clients."

The transaction will create a leading player in Workplace Wealth, combining E*TRADE's leading U.S. stock plan business with Shareworks by Morgan Stanley, a top provider of public stock plan administration and private cap table management solutions. This combination will enable Morgan Stanley to accelerate initiatives aimed at enhancing the workplace offering through online brokerage and digital banking capabilities, providing a significantly enhanced client experience.

E*TRADE has been a pioneer in the digital brokerage and banking space for nearly 40 years and is an iconic brand. E*TRADE's hallmarked, consumer-facing technology platforms will complement Morgan Stanley's leading advisor-facing technology. E*TRADE also provides a full suite of digital banking services, including direct integration with brokerage accounts, checking and high-yield savings accounts, significantly accelerating Morgan Stanley's digital banking efforts. The transaction adds approximately $56 billion of low-cost deposits, which will provide significant funding benefits to Morgan Stanley.

Importantly, the acquisition marks a continuation of Morgan Stanley's decade-long effort to rebalance the Firm's portfolio of businesses so that a greater percentage of Firm revenues and income are derived from balance sheet light and more durable sources of revenues. Upon integration, the combined Wealth and Investment Management businesses will contribute approximately 57% of the Firm's pre-tax profits, excluding potential synergies, compared to only approximately 26% in 2010.

The transaction provides significant upside potential for shareholders of both Morgan Stanley and E*TRADE. Shareholders from both companies will benefit from potential cost savings estimated at approximately $400 million from maximizing efficiencies of technology infrastructure, optimizing shared corporate services and combining the bank entities, as well as potential funding synergies of approximately $150 million from optimizing E*TRADE's approximate $56 billion of deposits. In addition, Morgan Stanley will have enhanced technology and service capabilities to capture a larger portion of the estimated approximate $7.3 trillion of combined current customer assets held away, which will drive significant revenue opportunities.

Morgan Stanley will be better positioned to generate attractive financial returns through increased scale, improved efficiency, higher margins, stronger returns on tangible common equity, and long-term earnings accretion. Morgan Stanley expects the acquisition to be accretive once fully phased-in estimated cost and funding synergies are realized. Morgan Stanley will maintain its strong capital

position, with the Firm's common equity tier 1 ratio estimated to increase by over 30bps at closing. The transaction is expected to increase the Firm's return on tangible common equity by more than 100bps with fully phased-in cost and funding synergies and improve Wealth Management's pre-tax profit margin to over 30%.

The acquisition is subject to customary closing conditions, including regulatory approvals and approval by E*TRADE shareholders, and is expected to close in the fourth quarter of 2020.

24. On April 17, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

### B. The Registration Statement Contains Materially False and Misleading Statements and Omissions

25. The Registration Statement, which recommends that E*TRADE shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) E*TRADE's and Morgan Stanley's financial projections; and (ii) the financial analyses performed by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Ardea Partners LP ("Ardea"), in connection with their fairness opinions.

26. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) E*TRADE's Reasons for the Merger; Recommendation of the E*TRADE Board of Directors; (iii) Opinions of E*TRADE's Financial Advisors; and (iv) Certain E*TRADE Unaudited Prospective Financial Information.

27. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, E*TRADE shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information.

In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning E*TRADE's and Morgan Stanley's Financial Projections

28. The Registration Statement omits material information concerning E*TRADE's and Morgan Stanley's financial projections.

29. The Registration Statement provides that the following financial projections concerning E*TRADE were created: (1) E*TRADE's financial forecasts prepared by management in November 2019 derived from a five year model which reflected actual results through September 30, 2019 (the "Initial E*TRADE Forecasts"); (2) E*TRADE's financial forecasts updated by management in February 2020 to reflect revised expectations based on actual results through December 31, 2019 and market developments, including updates to the interest rate forecasts (the "Updated E*TRADE Forecasts); and (3) extrapolations of the Updated E*TRADE Forecasts for calendar years 2025 through 2030 (the "E*TRADE Extrapolations, and together with the Updated E*TRADE Forecasts, the "E*TRADE Projections").

30. The Registration Statement provides that the following financial projections concerning Morgan Stanley were created: (1) Morgan Stanley's financial projections for calendar years 2020 through 2030 which were prepared by E*TRADE management (the "Forecasts for Morgan Stanley"); (2) with further adjustments made by E*TRADE management (the "Adjusted Forecasts for Morgan Stanley"); and (3) extrapolations of the Adjusted Forecasts for Morgan Stanley for calendar years 2022 through 2030 prepared at the direction of and approved by E*TRADE management (the "Adjusted Extrapolations for Morgan Stanley," and together with the Adjusted Forecasts for Morgan Stanley, the "Adjusted Projections for Morgan Stanley").

31. The Registration Statement presents tables setting forth purported summaries of the

(1) Initial E*TRADE Forecasts; (2) E*TRADE Projections; and (3) Adjusted Projections for Morgan Stanley.

32.     With respect to the Initial E*TRADE Projections and E*TRADE Projections, the Registration Statement fails to disclose projected tangible book value.

33.     With respect to the Adjusted Projections for Morgan Stanley, the Registration Statement fails to disclose: (1) projected tangible book value; and (2) projected earnings per share.

34.     The Registration Statement provides that "E*TRADE's management updated its strategic plan and financial forecasts" in November 2019 to reflect the "changing competitive landscape" and to incorporate the four elements for E*TRADE's future growth, including "(1) leveraging E*TRADE's iconic brand, hybrid support model and technology infrastructure, (2) empowering customers through powerful digital offerings and professional guidance, (3) capitalizing on symbiotic institutional channels and (4) maximizing stockholder returns and earnings growth through a dynamic model[.]"

35.     The Registration Statement, however, fails to disclose the resulting impact (including the quantification thereof) of the Company's November 2019 update to its strategic plan and financial forecasts to the Initial E*TRADE Projections and E*TRADE Projections.

36.     The disclosure of the aforementioned projected financial information is material because it would provide E*TRADE shareholders with a basis to project the future financial performance of E*TRADE and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisors, the Company's shareholders are unable to determine how

much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

37.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to E*TRADE shareholders.

### 2. Material Omissions Concerning J.P. Morgan's and Ardea's Financial Analyses

38.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning the analyses performed by J.P. Morgan and Ardea.

39.     The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan and Ardea in rendering their purported fairness opinions must be fairly disclosed to E*TRADE shareholders. The description of J.P. Morgan's and Ardea's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, E*TRADE shareholders are unable to fully understand J.P. Morgan's and Ardea's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to E*TRADE shareholders.

#### a. *J.P. Morgan's Financial Analyses*

40.     The Registration Statement fails to disclose the individual multiples utilized by J.P. Morgan in its "*Public Trading Multiples Analysis – E*TRADE Standalone*[.]"

41.     The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Dividend Discount Analysis – E*TRADE Standalone*": (1) the cash amounts estimated to be distributed to E*TRADE stockholders in the form of dividends and share repurchases during each

year 2020 to 2029, as reflected in the "E*TRADE Forecasts"[2]; (2) the implied amount of the additional cash distributions E*TRADE would make to its stockholders during each year 2020 through 2029 to achieve a Tier 1 Leverage Ratio of 6.75%; (3) the terminal values for E*TRADE; and (4) the individual inputs and assumptions underlying the (i) perpetuity growth rate range of 2.75% to 3.25%, and (ii) discount rates from 11.0% to 12.0%.

42. The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Dividend Discount Analysis – Morgan Stanley Standalone*": (1) the cash amounts estimated to be distributed to Morgan Stanley stockholders in the form of dividends and share repurchases during each year 2020 to 2029; (2) the implied amount of the additional cash distributions Morgan Stanley would make to its stockholders during each year 2020 through 2029 to achieve a supplementary leverage ratio of 6%; (3) the terminal values for Morgan Stanley; and (4) the individual inputs and assumptions underlying the (i) perpetuity growth rate range of 2.75% to 3.25%, and (ii) discount rates from 10.25% to 11.25%.

43. The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Value Creation Analysis*": (1) the range of implied equity values of holders of E*TRADE common stock in the pro forma combined company; (2) the estimated present value of the expected cost "Synergies,"[3] net of restructuring charges, including one-time transaction fees; and (3) the

---

[2] J.P. Morgan defines "E*TRADE Forecasts" as "certain internal financial analyses and forecasts prepared by or at the direction of the management of E*TRADE relating to E*TRADE's business" but fails to elaborate which specific E*TRADE projections are included in this definition. This must be clarified.

[3] The "Synergies," as defined by J.P. Morgan, apparently consist of the "estimated amount and timing of the cost savings and related expenses and synergies expected to result from the proposed Merger." *See* Registration Statement at 65. But the J.P. Morgan-defined "Synergies," which were "prepared by or at the direction of the management of E*TRADE," are not clearly presented to shareholders, including the nature, amounts, and timing of the expected cost savings and synergies.

estimated present value of expected funding "Synergies."

44.     With respect to J.P. Morgan's analysis of broker stock price targets for E*TRADE and Morgan Stanley, the Registration Statement fails to disclose: (1) the individual price targets observed by J.P. Morgan in its analysis; and (2) the sources of those price targets.

### b. *Ardea's Financial Analyses*

45.     The Registration Statement fails to disclose the following concerning Ardea's "*Dividend Discount Analyses for E*TRADE*": (1) the annual cash amounts estimated to be distributed to E*TRADE stockholders in the form of dividends and share repurchases over the period beginning December 31, 2019 through December 31, 2029, as reflected in the "Forecasts";[4] (2) the annual amount of additional capital distributions (or minus the additional capital requirements) required to achieve a Tier 1 Leverage Ratio target of 6.75% at the end of each year over the period beginning December 31, 2019 through December 31, 2029; (3) the range of implied terminal values for E*TRADE as of December 31, 2029; (4) the individual inputs and assumptions underlying the (i) perpetuity growth rates ranging from 3.0% to 3.5%, and (ii) range of discount rates from 11.0% to 13.0%; and (5) the total number of fully diluted shares of E*TRADE common stock outstanding as of December 31, 2019.

46.     The Registration Statement fails to disclose the following concerning Ardea's "*Premia Paid Analysis*": (1) the transactions observed by Ardea in its analysis; and (2) the individual premiums paid in each of the transactions.

47.     With respect to Ardea's "*Present Value of Future Stock Price and Dividends*

---

[4] Ardea defines "Forecasts" as "certain internal financial analyses and forecasts for E*TRADE and certain financial analyses and forecasts for Morgan Stanley, in each case as prepared by the management of E*TRADE and approved for Ardea's use by E*TRADE," but fails to elaborate which specific E*TRADE projections are included in this definition. This must be clarified.

*Analysis for E*TRADE on a Standalone Basis*[,]" the Registration Statement fails to disclose the individual inputs and assumptions underlying the (i) range of implied multiples of price to EPS of 11.0x to 13.0x, and (ii) discount rates of 11.0% and 13.0%.

48.     The Registration Statement fails to disclose the following concerning Ardea's "*Illustrative Pro Forma Analysis*": (1) the adjusted EPS of Morgan Stanley for 2021, 2022 and 2023 as a result of the Proposed Transaction; (2) the adjusted EPS of Morgan Stanley for 2021, 2022 and 2023 on a pro forma basis giving effect to the Proposed Transaction; (3) the TBV per share of Morgan Stanley at year-end 2020; (4) the TBV per share of Morgan Stanley at year-end 2020 on a pro forma basis giving effect to the Proposed Transaction; (5) the "Synergies"[5] utilized by Ardea in its analysis; and (6) the integration costs that may be incurred by Morgan Stanley in connection with the Proposed Transaction.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

---

[5] The "Synergies," as defined by Ardea, apparently consist of "certain cost savings and operating synergies projected by the management of E*TRADE to result from the Merger[.]" *See* Registration Statement at 73. But the Ardea-defined "Synergies," which were "approved for Ardea's use by E*TRADE," are not clearly presented to shareholders, including the nature, amounts, and timing of the expected cost savings and synergies.

51.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

52.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

53.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

54.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

55.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control,

14

directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with and/or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

59. In addition, as the Registration Statement sets forth at length, and as described herein, certain Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 26, 2020　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　**HALPER SADEH LLP**

　　　　　　　　　　　　　　　　　　　　　　/s/ Zachary Halper
　　　　　　　　　　　　　　　　　　　　　　Zachary Halper, Esq.
　　　　　　　　　　　　　　　　　　　　　　36 Kingston Run
　　　　　　　　　　　　　　　　　　　　　　North Brunswick, NJ 08902
　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 763-0060
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (646) 776-2600
　　　　　　　　　　　　　　　　　　　　　　Email: zhalper@halpersadeh.com

　　　　　　　　　　　　　　　　　　　　　　Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
　　　　　　　　　　　　　　　　　　　　　　375 Park Avenue, Suite 2607
　　　　　　　　　　　　　　　　　　　　　　New York, NY 10152
　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 763-0060
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (646) 776-2600
　　　　　　　　　　　　　　　　　　　　　　Email: sadeh@halpersadeh.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*